United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

D-3 Mariano Lozoya Garcia,

    Defendant.
                                   /

Hon. Terrence G. Berg

Case No. 17-cr-20639

# Plea Agreement

The United States of America and the defendant, Mariano Lozoya Garcia, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.**   **Counts of Conviction**

The defendant will plead guilty to Count 1, Count 3, and Count 5 of the Third Superseding Indictment. Count 1 charges the defendant with Aiding and Abetting the Interstate Travel with the Intent to Kill, Injure or Harass, Death Resulting under 18 USC §§ 2261A(1) and 2261(b)(1). Count 3 charges the defendant with Aiding and Abetting the Interstate Travel in Aid of Unlawful Activity, Death Resulting, under 18 USC § 1952. Count 5 charges the defendant with Conspiracy to Possess with Intent to Distribute and to Distribute 5 Kilograms

Page **1** of **20**

or more of Cocaine and a Detectable Amount of Heroin under 21 USC §§ 846, 841(A)(1), 841(b)(1)(A), 841(b)(1)(C) and 851.

## 2. Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | Up to Life |
| --- | --- | --- |
| | Fine: | $250,000 |
| | Term of supervised release: | 5 years |
| Count 3 | Term of imprisonment: | Up to Life |
| | Fine: | $250,000 |
| | Term of supervised release: | 5 years |
| Count 5 | Term of imprisonment: | 15 years to Life |
| | Fine: | $20,000,000 |
| | Term of supervised release: | 10 years to Life |

The defendant further understands that the Court has the discretion to run the sentences of imprisonment on the counts of conviction consecutively to each other.

The defendant understands that Count 5 requires a mandatory minimum sentence of 180 months' imprisonment and that the Court may not impose a sentence on that count below the mandatory minimum.

**3. Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Counts 2 and 4, Use and Carrying a Firearm During and in Relation to a Crime of Violence Causing Death; and, Count 6, Use and Carrying a Firearm During and in Relation to a Drug Trafficking Offense Causing Death; all three counts in violation of 18 U.S.C. §§ 924(c) and (j). Additionally, the government will move to dismiss Count Seven, Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h).

**4. Elements of Counts of Conviction**

The elements of Count 1 are:

a) First, the crime of Interstate Travel with the Intent to Kill, Injure or Harass, Death Resulting, was committed. The crime of Interstate Travel with the Intent to Kill, Injure or Harass, Death Resulting is committed when:

   i. An individual traveled in interstate or foreign commerce;

   ii. The individual did so with the intent to kill, injure, or harass another person;

   iii. In the course of, or as a result of, such travel the individual engaged in conduct that placed that other person in reasonable fear of the death or serious bodily injury to that person; and

   iv. The individual's conduct resulted in the death of the victim.

b) Second, the defendant helped to commit the crime or encouraged someone else to commit the crime.

c) And third, the defendant intended to help commit or encourage the crime.

The elements of Count 3 are:

a) First, the crime of Interstate Travel in Aid of Unlawful Activity, Death Resulting, was committed. The crime of Interstate Travel in Aid of Unlawful Activity, Death Resulting when:

   i. An individual traveled in interstate commerce;

   ii. The individual's intent was to commit any crime of violence to further an unlawful activity, in this case a business enterprise involving narcotics or controlled substances;

   iii. After the interstate travel, the individual knowingly and willfully committed any crime of violence to further such unlawful activity; and

   iv. The individual's conduct resulted in the death of the person.

b) Second, the defendant helped to commit the crime or encouraged someone else to commit the crime.

c) And third, the defendant intended to help commit or encourage the crime.

The elements of Count 5 are:

a) Two or more people conspired, or agreed, to commit the crime of Possession with the Intent to Distribute and to Distribute Cocaine and Heroin;

b) The defendant knowingly and voluntarily joined the conspiracy; and

c) The conspiracy involved more than five kilograms of cocaine, all of which was attributable to defendant as the result of his own conduct and the conduct of other co-conspirators that was reasonably foreseeable to him.

**5.    Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offenses, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in about June 2016, Mariano Garcia, Coconspirator 2 and others conspired to distribute and to possess with the intent to distribute cocaine and heroin in the Eastern District of Michigan and elsewhere. On June 15, 2016, Coconspirator 2 introduced Garcia to Coconspirator 1 and Robert Eddins in

Detroit. For the ensuing months, Garcia regularly supplied Coconspirator 1 and Eddins kilograms of cocaine. Coconspirator 1 and Eddins had multiple meetings in Texas, in the suburbs of Houston or Dallas, and also in Birmingham, Alabama. Garcia provided approximately three to six kilograms of cocaine per shipment, approximately every two weeks, on consignment. Coconspirator 1 and Eddins paid $34,000 per kilogram.

In late October / early November 2016, Garcia fronted over ten kilograms of cocaine to Coconspirator 1 and Eddins. Eddins took his portion of the cocaine to Detroit to distribute. On November 18, 2016, Coconspirator 1 and Coconspirator 3, drove from Birmingham, Alabama to Sugarland, Texas and met with Garcia. Eddins met the others in Sugarland but did not bring all of the money he owed for the fronted drugs. After the meeting, Coconspirator 1, now in debt to Garcia for his and Eddins' share decided to pay Garcia because he did not "want to fucking my plug up."

In December, Garcia repeatedly questioned Coconspirator 1 about finding Eddins and getting his money. Garcia encouraged Coconspirator 1 to go to Detroit to look for Eddins. On December 18, in the early morning hours, Coconspirator 1, Coconspirator 3, and a third person left Birmingham, Alabama. Garcia knew that Coconspirator 1 intended to kill or injure Eddins when he traveled to Detroit. Once

they arrived in Detroit, Coconspirator 1 received a list of 11 addresses in Detroit related to Robert Eddins.

At approximately 8:15 p.m., the next day, December 19, 2016, Coconspirator 1 met Eddins at his residence on Pierson Street. Coconspirator 1 ultimately entered the Pierson residence with Eddins. They were joined later by the third person who had traveled from Alabama and a friend of Eddins's, Ricardo McFarlin. Coconspirator 3 stayed in the vehicle, parked a half a block away.

Coconspirator 1 and Garcia maintained contact throughout the night while Coconspirator 1 was at the Pierson residence. Garcia encouraged Coconspirator 1 to hurt Eddins in order to collect the money they were owed.

Coconspirator 1 and the third person bound McFarlin in the basement. Coconspirator 1 and the third person then used 9mm handguns to first threaten Eddins and then shoot and kill Eddins and McFarlin. They used the pillows from the upstairs living room couch to muffle the gunshot sounds. They ransacked the house and left.

Coconspirator 1 and Coconspirator 3 both continued to communicate with Garcia and met with him on January 3, 2017, in Katy, Texas to receive and distribute what they believed was a kilogram of heroin (it turned out to be non-narcotic heroin by products wrapped in a manner consistent with a kilogram of heroin).

From December 18 through 20, 2016, Garcia encouraged, counselled and assisted Coconspirator 1 to travel interstate, between Alabama and Michigan, with the intent to injure Robert Eddins due to the drug debt owed to him (Garcia). Garcia encouraged, counselled and assisted Coconspirator 1 to engage in conduct that placed Eddins in fear of death or serious bodily injury and that Eddins' death resulted.

From December 18 through 20, 2016, Garcia encouraged, counselled and assisted Coconspirator 1 to travel interstate, between Alabama and Michigan, with the intent to commit a crime of violence to further an unlawful activity. The unlawful activity was a business enterprise involving narcotics, that is, the ongoing cocaine distribution enterprise between Garcia, Coconspirator 1, Eddins, Coconspirator 3 and others. Eddins' death resulted from the crime of violence.

From June 2016 to January 4, 2017, Garcia engaged in a conspiracy to possess with the intent to distribute cocaine. Garcia voluntarily joined the conspiracy with Coconspirator 2, Coconspirator 1, Robert Eddins, and later Coconspirator 3, to distribute cocaine. Garcia agrees that the overall conspiracy involved over 50 kg of cocaine, and that the amount attributable to him as a result of his own conduct and the conduct of other coconspirators reasonably foreseeable to him during his involvement was between 50 to 150 kg of cocaine.

Finally, the defendant, Mariano Garcia, agrees that he qualifies for sentencing under U.S.C. §§ 841(b)(1)(A) and 851, because Count Five occurred after he was previously convicted of a serious drug felony, Possession with Intent to Distribute Cocaine, in the Middle District of Georgia on March 21, 2003. Further, the defendant served a sentence of incarceration more than 12 months and for which he was released within 15 years of June 2016.

**6.  Advice of Rights**

The defendant has read the Third Superseding Indictment, has discussed the charges and possible defenses with his attorney, and understands the crime(s) charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.  The right to plead not guilty and to persist in that plea;

B.  The right to a speedy and public trial by jury;

C.  The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.  The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.  The right to confront and cross-examine adverse witnesses at trial;

F.  The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

## 7. Collateral Consequences of Conviction

The defendant understands that his convictions here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his convictions here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his convictions here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's convictions might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his convictions.

**8.     Defendant's Guideline Range**

    **A.     Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

    **B.     Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offenses to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculation:

- Count One – USSG § 2A6.2(c) – Cross-reference for murder, §2A1.2 Second Degree Murder. Level 38
- Count Three – USSG § 2E1.2(a)(2) – Underlying crime of violence / cross-reference for murder, §2A1.2 Second Degree Murder. Level 38
- Count Five – USSG § 2D1.1(d)(1) – Cross-reference for murder, §2A1.2 Second Degree Murder. Level 38
- On all three counts, Restraint of victim, USSG § 3A1.3. Plus 2 levels.
- On all three counts, Aggravating role, organizer / manager, USSG § 3B1.1(c). Plus 2 levels.

The parties have no other joint recommendations as to the defendant's guideline calculation.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations

or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9. Imposition of Sentence

### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Agreement

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that a sentence of 300 months' imprisonment is the appropriate disposition of the case.

### 2. Limited Right to Withdraw

If the Court rejects the agreement by deciding to impose a sentence of imprisonment higher than permitted by paragraph 9.B.1, the defendant will be permitted to withdraw his guilty plea. That is the only reason the defendant may withdraw his guilty plea. If the defendant decides not to withdraw his guilty plea in those circumstances, the defendant agrees that the Court may impose a sentence higher than permitted by paragraph 9.B.1 and that all other provisions in this agreement will remain in effect.

If the Court rejects the plea agreement by deciding to impose a sentence of imprisonment lower than permitted by paragraph 9.B.1, or by rejecting or purporting to reject any other term or terms of this agreement, the government will be permitted to withdraw from this agreement.

### C. Supervised Release

#### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 10-year term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties'

recommendation. The defendant also understands that the government's agreement concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

There is no recommendation or agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure

Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F. Special Assessment

The defendant understands that he will be required to pay a special assessment of $300, due immediately upon sentencing.

## 10. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 300 months, the defendant also waives any right he may have to appeal his sentence on any grounds.

## 11. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or

sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12. Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea(s) or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

### 13. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

### 14. Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

### 15. Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or

administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 PM on April 27, 2023. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Dawn N. Ison
United States Attorney

_____
Craig Wininger
Chief, Violence and Organized Crime Unit
Assistant United States Attorney

_____
Rajesh Prasad and Robert Moran
Assistant United States Attorneys

Dated: 4/24/2023

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Mervyn Mossbacker
Attorney for Defendant
Dated: May 4, 2023

_____
Mariano Lozoya Garcia
Defendant