United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| United States of America, | Criminal No. 17-cr-20639 |
| Plaintiff, | Honorable Terrence G. Berg |
| v. | |
| D-3 Mariano Lozoya Garcia, | |
| Defendant. | |

## Government's Sentencing Memorandum

**I.  Introduction**

Mariano Garcia steadily and frequently distributed multiple kilograms of cocaine and heroin from Texas to Alabama and Detroit. Garcia conspired with the codefendants Michael Griffin and Dennis Epps, and victim, Robert Eddins, to distribute cocaine in Michigan and Alabama. However, when Eddins refused to pay for some drugs, Garcia encouraged Griffin and other coconspirators, to travel from Alabama to Detroit to harass and injure Eddins to collect that debt.  During the attempt to collect the debt, two people—Eddins and an innocent bystander— were brutally murdered.  And, after these murders, Garcia continued to distribute drugs to coconspirators Griffin and Epps,

1

meeting with them in Texas and providing what he thought a kilogram of heroin.

Garcia pleaded guilty to Counts One, Three and Five of the Third Superseding Indictment. Count One charges him with aiding and abetting Interstate Travel with the Intent to Kill, Injure, or Harass, Death Resulting contrary to 18 U.S.C.§§ 2261A(1) and 2261(b)(1). Count Three charges him with aiding and abetting Interstate Travel in the Aid of Unlawful Activity, Death Resulting contrary to 18 U.S.C. § 1952. Count Five charges him with Conspiracy to Possess with Intent to Distribute Five Kilograms or more of Cocaine and a Detectable Amount of Heroin, contrary to 21 U.S.C. §§ 846, 841(a)(1)(A), pursuant to a plea agreement. Count Five carries a mandatory minimum sentence of 180 months, while Counts One and Three do not. The parties agreed in the Rule 11, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence of 300 months is the appropriate disposition of this case.

A Presentence Investigation Report ("PSR") was prepared. There are no unresolved objections. Probation determined that Griffin's guideline range is 324 months to 405. (PSR ¶ 69). The government

requests this Court accept the plea agreement and impose a sentence consistent with its terms.

## II. Facts

Beginning in June 2016, Mariano Garcia, from Brownsville, Texas, distributed with codefendants Troy Harris and Reuben Valdez and others ten kilograms of cocaine in the Eastern District of Michigan. Garcia coordinated the load of cocaine, brought to Michigan from Maryland by Valdez. He provided the cocaine to Harris who further distributed it. Garcia helped load over $300,000 in a secret compartment in Valdez's vehicle to be transported to Texas. During the June 2016 distribution in Detroit, Harris introduced Garcia to Michael Griffin and Robert Eddins, friends of his from Alabama.

Garcia, Griffin, and Eddins, formed a sophisticated, nationwide conspiracy to possess and to distribute cocaine and heroin throughout the United States—including the Eastern District of Michigan. Garcia, living in Texas, would supply Griffin and Eddins with kilogram quantities of cocaine on a consignment basis. Garcia would front the drugs, then collect $34,000 per kilogram after the drugs were sold. Consistent with their agreement, Griffin and Eddins met with Garcia

multiple times in Texas and in Birmingham, Alabama to facilitate the distribution of the kilograms. Griffin would sell his product in Birmingham, while Eddins would sell his in Birmingham and Detroit.

In late October, Garcia fronted at least ten kilograms of cocaine to Eddins and Griffin. Eddins took his portion of the cocaine to Detroit to distribute it. On November 18, 2016, Griffin traveled to Texas to pay for Griffin's portion of the cocaine. Eddins did not pay Garcia for the cocaine that he was given. Eddins failure to pay caused a rift to develop between the conspirators. Griffin texted Eddins, expressing his disappointment about the refusal to pay for the drugs: "Cuzz this is bad and you no it now he putting all this on me." Eddins replied, "Man f*ck him I'll turn around." Garcia's last text to Eddins was direct, "Cocksucker stop being a coward and man up and admit you are nothing but a dreamer. Get allmy $ together."

Garcia was holding Griffin accountable for Eddins nonpayment and refused to supply any more drugs until payment was received. Garcia and Griffin communicated by text message, almost daily, about Eddins. Garcia repeatedly encouraged Griffin to travel to Detroit to locate Eddins and collect the debt.

4

In December, Griffin made efforts to find Eddins and get the money he owed to Garcia. On December 18, Griffin, Dennis Epps, and another individual left Birmingham, Alabama, and traveled to Detroit to collect the debt from Eddins. The next day, at approximately 8:15 p.m., Griffin, Epps, Garcia and another member of the conspiracy met Eddins at his house on Pierson Street in Detroit. They drove to a Walmart in Livonia, Michigan. Inside the Walmart, they were captured on surveillance video. The four then returned to Eddins's home. While they were at Eddins's home, Ricardo McFarlin, a friend of Eddins, arrived. Griffin, and the other member of the conspiracy remained at the house with Eddins and McFarlin.

While Griffin was inside Eddins's house, he was in constant contact with Garcia, who was encouraging Griffin to collect the debt. At 11:42 pm, Garcia texted Griffin, "So hes laughing at us still." Griffin responded, "Just chill dude I got him comfortable. I will not let him out my sight." To which, Garcia said, "Ok u call me." Interspersed between multiple lengthy calls between Garcia and Griffin, Garcia texted Griffin at 12:40 am on December 20, "Why don't you move him somewhere else. So they can start bringing all the money in. We want the kid as

5

warranty." And a final warning at 1:07 am, referring to codefendant Troy Harris (nicknamed "Red"), Garcia texted Griffin "Keep in mind red he knows too much."

Griffin and the other conspirator murdered Eddins and McFarlin in the basement of the house. Eddins was fatally shot three times in the head. McFarlin had seven gunshot wounds including defensive wounds on his wrists, which are consistent with McFarlin trying to hold up his hands prior to being shot. There were also contusions on his right hand and wrist consistent with being restrained. DPD recovered eight nine-millimeter shell casings. Ballistics determined seven rounds were fired from one gun and one round was fired from a second gun. Homicide investigators also believe that pillows from upstairs were brought down to the basement and used to muffle the gun shots. Eddins was wearing the same clothing that was depicted in the Walmart video, including the Timberland boots and sweatpants, missing was the gray puffy coat that his father had got for him:



***Still Photograph from Crime Scene Depicting both victims***

After the murders, Griffin went and picked up Epps at a local hotel at around 3:52 am. They drove directly back to Birmingham, Alabama, and reached there around 4:00 pm.

At 5:37 pm EST, Epps searched Detroit Free Press and News websites. He ultimately read an article about the homicide that evening. Approximately 30 minutes after Epps started searching news sites, Eddins's father, Robert Eddins III, went to the Pierson house, not having heard from his son all day. He found the house unlocked, no signs of forced entry.  Inside, music and the TV were blaring and the strong smell of gas from the oven in the kitchen. The three bedrooms on

7

the main floor had been ransacked. He found his son and McFarlin in the basement with obvious multiple gunshots to the head and face.

After the murders Garcia continued to communicate and meet with Griffin and Epps. They traveled together to meet with Garcia on January 3, 2017, in Katy, Texas. While in Texas, Garcia gave Griffin and Epps what was believed to be a kilogram of heroin. (Although Garcia believed the substance was heroin and agreed to distribute it, the substance was actually counterfeit).

The next day, January 4, 2017, while Griffin and Epps were traveling back to Alabama, along with another individual, they were stopped by Louisiana State Police. Their car was searched and, in the trunk, troopers located a kilogram of non-narcotic heroin byproduct. Troopers also recovered six cell phones from the vehicle and the gray puffy jacket that Eddins was seen wearing in the Walmart surveillance video hours before he was murdered. Two days later, a subsequent search of the car, revealed a nine-millimeter handgun under the driver's seat.

### III. Advisory Sentencing Guidelines

Although the sentencing guidelines are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the applicable range defendant faces. *See United States v. Booker*, 543 U.S. 220, 245 (2005). The advisory Guidelines remain an important factor in sentencing. "[I]t is fair to assume that the Guidelines . . . reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 345 (2007).

In *United States v. Gall*, 552 U.S. 38 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 552 U.S. at 49.

Probation scored Garcia's advisory guideline range as 324 – 405 months. The parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which if accepted by the Court, requires a sentence of 300 months. The government requests the Court accept the plea agreement under Rule 11(c)(1)(C) and impose a sentence on Garcia of 300 months imprisonment.

## IV. Sentencing Factors

9

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."

Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors are evaluated below.

### 1. Nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of this offense are extremely serious.  Not only did Garcia's engage in long-term large scale drug distribution of highly addictive and destructive hard narcotics, but he encouraged Griffin to seek out Eddins to pay a drug debt.  A direct result of his encouragement was the murder of Eddins and an innocent bystander who had the misfortune of visiting Eddins at the wrong

time—moments before he was to be killed. Unlike Griffin and others, Garcia did not travel to Michigan to confront Eddins. Rather, he encouraged them to harass and injure to collect the drug debt.

### 2. The history and characteristics of the offender, 18 U.S.C. § 3553(a)(1)

This is not Garcia's first conviction for a large-scale drug trafficking operation. Garcia is on supervised release for his 2002 conviction in the United States District Court in Macon, Georgia, for possession with intent to distribute 5 or more kilograms of cocaine. (PSR ¶ 47). In that case, Garcia was a load manager that coordinated the distribution of 264 kilograms of cocaine from Brownville, Texas to Albany, Georgia. After serving a 182-month sentence, Garcia returned to similar conduct and committed the instant offenses while on supervised release. (PSR ¶ 49).

### 3. Seriousness of the offense, promoting respect for law, and providing just punishment, 18 USC § 3553(a)(2)(A)

The seriousness of Garcia's offense cannot be understated. "A just punishment takes into account the consequences of a defendant's crimes, and their impact on the victims, others, and the community." *United States v. Haughawout*, 502 F. Supp.3d 1234, 1238 (N.D. Ohio

11

2020). It cannot be disputed that the impact of Garcia's crimes has been significant. Not only did his membership in a violent drug conspiracy, put dangerous drugs on the street, but Garcia also helped contribute to the deaths of two people. The extent of the suffering inflicted on the victims' families is painfully evident from their impact statement. *See Sealed Exhibit 1.*

### 4. Adequate deterrence and protecting the public from further crimes of the defendant, §3553(a)(2)(B) and (C)

This factor includes two components—specific deterrence and general deterrence. Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on "the population at large." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

A sentence of 300 months is significantly greater than Garcia's prior drug trafficking conviction. It takes into account Garcia's encouragement of violence, even if just to collect a drug debt. It also takes into account Garcia's history of large-scale drug trafficking, a life that Garcia clearly has not left. A significant sentence of incarceration supports specific deterrence.

In this case, a sentence of 300 months is particularly relevant to general deterrence, thereby dissuading the population at large for attempting similar criminal endeavors. A significant sentence sends a clear and unambiguous message to those who would ignore the violence associated with the trafficking of drugs, just for money. The consequences will be severe.

## V.  Conclusion

The government recommends that the Court impose a sentence of 300 months.

>Dawn N. Ison
>United States Attorney
>
>*/s/ Rajesh Prasad*
>Rajesh Prasad
>Robert Moran
>Assistant United States Attorneys
>211 West Fort Street, Suite 2001
>Detroit, Michigan 48226-3211
>(313) 226-0281
>Rajesh.prasad@usdoj.gov

Dated:  September 14, 2023

## Certificate of Service

I hereby certify that on September 14, 2023, I electronically filed the government's sentencing memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the attorney of record. Because Exhibit 1 of the sentencing memorandum is filed under seal, I will provide a copy of Exhibit 1 to the attorney of record, Mervyn Mossbacker.

*/s/ Rajesh Prasad*
Rajesh Prasad
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0821
Rajesh.prasad@usdoj.gov